IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

COCA-COLA SOUTHWEST
BEVERAGES LLC,

    Plaintiff,

      v.

MARTEN TRANSPORT, LTD.,

    Defendant.

CIVIL ACTION FILE
NO. 1:21-CV-4961-TWT

## OPINION AND ORDER

    This is a breach of contract action. It is before the Court on the Plaintiff's

Motion for Partial Summary Judgment [Doc. 72], the Plaintiff's Motion to Stay

[Doc. 75], and the Defendant's Motion for Summary Judgment [Doc. 76]. For

the reasons set forth below, the Plaintiff's Motion for Partial Summary

Judgment [Doc. 72] is GRANTED, the Plaintiff's Motion to Stay [Doc. 75] is

GRANTED, and the Defendant's Motion for Summary Judgment [Doc. 76] is

GRANTED in part and DENIED in part.

## I.    Background

    This case arises from the denial of a tender of defense and demand for

indemnity in a Texas state court action by the Plaintiff Coca-Cola Southwest

Beverages LLC. In October 2019, William Gero, an employee of the Defendant

Marten Transport, Ltd., was allegedly injured at a Coca-Cola Southwest

facility in Texas when a Coca-Cola Southwest employee struck him with a

forklift. (Def.'s Statement of Additional Undisputed Material Facts ¶ 1.) Gero

filed suit against Coca-Cola Southwest and the forklift operator, Jonathan Scott, in the 11th Judicial District of Harris County, Texas, (the "*Gero* action") alleging that Coca-Cola Southwest and Scott were at fault for his injuries. (*Id.* ¶¶ 3-7.) In its answer to the *Gero* action, Coca-Cola Southwest asserted that Gero's injuries were caused by his own negligent acts and omissions—namely his failure to comply with Coca-Cola Southwest's safety practices and procedures. (Pl.'s Statement of Undisputed Material Facts ¶ 15.) Coca-Cola Southwest also designated Marten Transport as a responsible third party. (*Id.* ¶ 16.) There has been no adjudication on the merits or other final judgment or settlement in the *Gero* action. (*Id.* ¶ 17.)

On September 9, 2020, Coca-Cola Southwest tendered its defense of the *Gero* action to Marten Transport under a Transportation Services Agreement for General Carriers (the "Agreement") between Marten Transport and non-party Coca-Cola Bottlers Sales & Services LLC. (*Id.* ¶ 18.) It is undisputed that Coca-Cola Southwest is an intended third-party beneficiary under the Agreement. (*Id.* ¶¶ 2-3.) Coca-Cola Southwest based its tender demand on Article 19.1 of the Agreement, which provides:

> [Marten Transport] shall indemnify, defend, and hold . . . [Coca-Cola Southwest] and [its] parents, subsidiaries, affiliates, and their respective officers, directors, employees and agents . . . harmless from and against any and all claims, demands, suits and proceedings whatsoever initiated by [Marten Transport's] employees, agents or contractors, or other third parties; provided, however, that [Marten Transport's] indemnification and hold harmless obligations under this paragraph will not apply to the prorated extent that any claim is attributable to the negligence or

2

wrongful conduct of [Coca-Cola Southwest].

(*Id.* ¶ 10.) Under Article 19.2, Marten Transport further agreed to indemnify, defend, and hold Coca-Cola Southwest harmless in certain enumerated situations, including in relevant part: (1) "any breach of any obligation of [Marten Transport] under this Agreement, whether by [Marten Transport] itself or as a result of the acts or omissions of [Marten Transport's] employees, agents or contractors"; (2) "any Services provided by [Marten Transport] hereunder, including without limitation Services performed by its employees, agents, or contractors"; (3) "any negligent or willful act or omission of [Marten Transport] or its employees, agents or contractors"; and (4) "[Marten Transport's] failure to comply with applicable laws, industry practice or [Coca-Cola Southwest's] standards[.]" (Agreement ¶ 19.2.)

Marten Transport denied Coca-Cola Southwest's tender demand on April 28, 2021, and has since never provided a defense to Coca-Cola Southwest in the *Gero* action. (Pl.'s Statement of Undisputed Material Facts ¶¶ 19-21.) In this case between Coca-Cola Southwest and Marten Transport, Coca-Cola Southwest asserts three claims for breach of contract (Count I), declaratory judgment (Count II), and attorney's fees and expenses (Count III). Not only does Coca-Cola Southwest allege that Marten Transport breached the Agreement by refusing to defend and indemnify it against Gero's claims, but Coca-Cola Southwest also alleges that Marten Transport failed to maintain insurance policies and follow safety procedures specified in the Agreement.

3

(First Am. Compl. ¶¶ 44-52.)

In particular, Article 16 and Schedule E of the Agreement require that Marten Transport obtain commercial general liability insurance and statutory workers' compensation liability and employer's liability insurance naming Coca-Cola Southwest as an additional insured. (Agreement ¶ 16.1 & Schedule E ¶¶ 1, 4.) The commercial general liability policy must be primary and contain limits of at least $1,000,000 per occurrence and $2,000,000 in the aggregate. (*Id.*, Schedule E ¶ 1(a).) The workers' compensation policy must also be primary and contain limits of at least $1,000,000 each employee by accident, $1,000,000 each employee by disease, and $1,000,000 aggregate by disease with benefits afforded under the laws of the state or country in which the services are to be performed. (*Id.* ¶ 1(d).) According to Marten Transport, it acquired each of the required policies through ACE American Insurance Company prior to Gero's accident.[1] (Def.'s Statement of Undisputed Material Facts ¶¶ 8-11, 13-16.) Regarding the issue of safety, the Agreement states that Marten Transport must follow all applicable safety practices and procedures, including those established by Coca-Cola Southwest for its premises, in performing its services. (Agreement ¶ 6.3.)

---

[1] While Coca-Cola Southwest objects to the ACE policies as unauthenticated, the Court may—and will—consider them since "it is apparent that they will be admissible at trial." *Fed. Ins. Co. v. United Cmty. Banks, Inc.*, 2010 WL 3842359, at *8 (N.D. Ga. Sept. 27, 2010).

Now pending before the Court are the parties' motions for summary judgment and Coca-Cola Southwest's motion to stay. Coca-Cola Southwest moves for summary judgment on the narrow issue of whether Marten Transport has a duty to defend it against the *Gero* action. Once that issue is decided, Coca-Cola Southwest asks the Court to stay this case pending the outcome of the *Gero* action, which will determine the extent of Marten Transport's indemnification obligation under the Agreement. For its part, Marten Transport opposes a stay because its motion for summary judgment, if granted, would resolve this entire case. In its motion, Marten Transport argues that it has no duty to defend or indemnify Coca-Cola Southwest against allegations that Coca-Cola Southwest (and its agent) was solely negligent for Gero's injuries. Marten Transport also argues that it complied with all of its insurance obligations under the Agreement and that its alleged safety violations are not ripe and, in any event, could not cause indemnifiable losses to Coca-Cola Southwest.

## II.   Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The party seeking summary

judgment must first identify grounds that show the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## III. Discussion

### A. Coca-Cola Southwest's Motion for Partial Summary Judgment

In its motion for partial summary judgment, Coca-Cola Southwest argues that Marten Transport breached its duty to defend Coca-Cola Southwest in the *Gero* action. (Pl.'s Br. in Supp. of Pl.'s Mot. for Partial Summ. J., at 1.) As noted, the Agreement requires Marten Transport to indemnify, defend, and hold Coca-Cola Southwest harmless against all claims and suits initiated by Marten Transport's employees. (Agreement ¶ 19.1.) Immediately after this indemnity language, contained within the same paragraph, is the following exculpatory clause: "provided, however, that [Marten Transport's] indemnification and hold harmless obligations under this paragraph will not apply to the prorated extent that any claim is attributable to the negligence or wrongful conduct of the Indemnitees." (*Id.*) Because this clause does not include the word "defend," Coca-Cola Southwest reasons that the duty to defend is subject to no qualifications. (Pl.'s Br. in Supp. of Pl.'s Mot. for Partial Summ. J., at 11.) That is, Coca-Cola Southwest's position is that Marten Transport must defend it even where Marten Transport has no obligation to

6

indemnify and hold it harmless; even in actions arising from Coca-Cola Southwest's sole negligence.

In Georgia, the construction of a contract is a matter of law reserved, at least initially, for the court. *See Woody's Steaks, LLC v. Pastoria*, 261 Ga. App. 815, 817 (2003). "The cardinal rule of contract construction is to ascertain the intention of the parties." *Samdperil v. Watson*, 359 Ga. App. 129, 130 (2021) (citation omitted). When construing a contract, the trial court must first determine whether the disputed terms are clear and unambiguous, examining the contract as a whole and affording the words their plain and ordinary meaning. *See id.* at 130-31. If the contract is unambiguous, the court will enforce it according to its plain terms. *See id.* at 131. If an ambiguity exists, though, the court must apply the statutory rules of contract construction to resolve the ambiguity. *See id.* A contract which remains ambiguous after this second step will be submitted to the jury to determine the meaning of the ambiguous language and the intent of the parties. *See id.* at 130.

As an initial matter, the parties dispute the scope of the three duties listed in Article 19.1: to indemnify, to defend, and to hold harmless. Marten Transport argues that the term "hold harmless" is meant to absolve Coca-Cola Southwest of all liability and thus encompasses a duty to defend Coca-Cola Southwest. (Def.'s Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 6 & n.3.) By extension, Marten Transport reasons, the duty to defend is part of Article 19.1's sole-negligence exclusion for the duty to hold harmless. (*Id.* at 6.) In

7

response, Coca-Cola Southwest argues that defense and indemnification are two separate duties under Georgia law and should not be conflated in the context of the Agreement. (Reply Br. in Supp. of Pl.'s Mot. for Partial Summ. J., at 6-7.)

It is well-settled in Georgia that the duty to defend is distinct from, and broader than, the duty to indemnify. *See S. Tr. Ins. Co. v. Mountain Express Oil Co.*, 351 Ga. App. 117, 121 (2019); *Shafe v. Am. States Ins. Co.*, 288 Ga. App. 315, 317 (2007). The duty to defend is concerned not with "whether the underlying action has merit, but [with] whether the complaint alleges a claim that is covered by the [defense agreement]." *Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc.*, 224 Ga. App. 557, 563 (1997). "If the facts as alleged in the complaint bring the occurrence even arguably within the [agreement's] coverage, the insurer has a duty to defend the action, regardless of whether liability is ultimately established." *Id.* By contrast, the duty to indemnify arises when the indemnitee becomes legally obligated to pay damages upon the entry of a final judgment or settlement of the underlying claims. *See Am. Family Ins. Co. v. Almassud*, 413 F. Supp. 3d 1292, 1300-01 (N.D. Ga. 2019). "As a result, an insurer might be required to defend an insured, but at the end of the underlying lawsuit, have no duty to indemnify him." *Id.* at 1300.

If defense is distinct from indemnification, the Court finds that it must also be distinct from the notion of "hold-harmless." That is because indemnification and hold-harmless are analogous duties according to the

8

weight of authority.[2] *See, e.g., Hold-Harmless Clause*, Black's Law Dictionary (11th ed. 2019) (defining "Hold-Harmless Clause" by reference to the dictionary entry for "Indemnity Clause"); *Lanier at McEver, L.P. v. Planners & Eng'rs Collaborative, Inc.*, 284 Ga. 204, 208-12 (discussing indemnification and hold-harmless at length without distinguishing the two concepts); *cf. MT Builders, LLC v. Fisher Roofing, Inc.*, 219 Ariz. 297, 306 (Ariz. Ct. App. 2008) (holding that a contractual promise to hold harmless does not by itself create an immediate, up-front duty to defend). Thus, the Court rejects Marten Transport's argument that Article 19.1's exculpatory clause, which expressly identifies only the duties to indemnify and to hold harmless, necessarily applies to the duty to defend.

This conclusion is underscored by the language and structure of Article 19.1. In particular, the exculpatory clause uses the plural term "obligations" in referring to the duties to indemnify and to hold harmless (i.e., "[Marten Transport's] indemnification and hold harmless *obligations* under this

---

[2] Marten Transport relies on one decision from the Northern District of Mississippi, *Georgia-Pacific LLC v. Hornady Truck Line, Inc.*, 2009 WL 484629 (N.D. Miss. Feb. 29, 2009), for the proposition that "the plain meaning of the term 'hold harmless' . . . 'logically include[s] a duty to defend[.]'" (Def.'s Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 6 (quoting *Hornady*, 2009 WL 484629, at *4). But that case is of little persuasive value since the court did not cite a single authority in Georgia (or elsewhere) to support its conclusion. Indeed, a later court, addressing the same indemnity language at issue in *Hornady*, found that the *Hornady* decision was "not based upon any particular tenet of Georgia law[.]" *Ga.-Pac., LLV v. W. Express, Inc.*, 2015 WL 5098220, at *4 (W.D. Va. Aug. 31, 2015).

paragraph will not apply . . . .”). (Agreement ¶ 19.1 (emphasis added)). That means the duties to indemnify and to hold harmless are treated as multiple, distinct obligations under Article 19.1. In this context, the only acceptable construction of the duty to defend is that it, too, must be one of multiple, distinct obligations—not merely an element of the duty to hold harmless.

*Bruce v. Georgia-Pacific, LLC*, 326 Ga. App. 595 (2014), offers a helpful comparison. In *Bruce*, a transportation company, TMC, agreed to defend, save harmless, and indemnify Georgia-Pacific from all manner of suits, “provided that *this hold harmless and indemnity shall not apply to the extent that the action giving rise to the claim was caused by any act or omission of Georgia-Pacific.*” *Bruce*, 326 Ga. App. at 600 (punctuation omitted). Like Coca-Cola Southwest, Georgia-Pacific argued that the omission of “defense” from the exculpatory clause meant only TMC’s responsibilities to hold harmless and to indemnify were excused. *See id.* at 601. The Georgia Court of Appeals disagreed: emphasizing the use of the singular demonstrative pronoun “this” in the exculpatory clause, the court found that the clause “clearly refers to the paragraph’s aforementioned responsibility ‘to *defend*, save harmless *and* indemnify’ Georgia-Pacific.” *Id.*

A federal court addressing the same indemnity language as *Bruce* reached the same conclusion. *See W. Express*, 2015 WL 5098220, at *4. The *Western Express* court explained:

> The word "this[]" . . . reflects that the phrase "hold harmless and indemnity" is used as a singular noun, rather than multiple distinct nouns. . . . [T]he drafter set forth the duties at the beginning of section 7(c) as verbs, "to defend, save harmless and indemnify," and yet describes those duties in the sole negligence exception using a singular noun, "this hold harmless and indemnity." Overall, the language of section 7(c) suggests that the drafter intended for "this hold harmless and indemnity" to encompass all of the duties owed in that section, including the duty to defend.

*Id.* (citation omitted). Unlike in *Bruce* and *Western Express*, Article 19.1's sole-negligence exclusion describes the duties to indemnify and to hold harmless as two separate nouns, reinforcing the conclusion that the duty to defend also has its own unique meaning and significance.[3]

In sum, the Court concludes that Article 19.1 requires Marten Transport to defend Coca-Cola Southwest in a lawsuit initiated by a Marten Transport employee that alleges negligence or wrongful conduct by Coca-Cola Southwest. This conclusion, the Court believes, is clear and unambiguous under the plain terms of Article 19.1, so the Court need not consult the rules of contract construction at the second step of Georgia's construction framework. To this point, Marten Transport has refused to provide Coca-Cola Southwest a defense

---

[3] Marten Transport emphasizes that Article 19.1 also uses the word "this" in referring to the "indemnification and hold harmless obligations under *this* paragraph[.]" (Def.'s Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 8.) The use of the singular demonstrative pronoun here, though, simply reveals that Article 19.1 is a single paragraph and that the indemnification and hold harmless duties are found in that paragraph. Neither of these facts is in question. Put simply, the term "this paragraph" does not explain whether the duties listed therein should be read separately or as a collective unit.

in the *Gero* action. Accordingly, Coca-Cola Southwest is entitled to summary judgment as to liability on Count I for breach of the duty to defend under Article 19.1. Because Count II for declaratory judgment is duplicative of the breach of contract claim, the Court dismisses Count II as to Marten Transport's obligation to defend Coca-Cola Southwest. *See Bauer v. State Farm Life Ins. Co.*, 2022 WL 912687, at *5 (N.D. Ga. Mar. 28, 2022) ("Where, as here, the declaratory judgment count would serve no useful purpose because the issues will be resolved by another claim, courts generally decline to entertain the declaratory judgment count." (citation omitted)).

## B.  Marten Transport's Motion for Summary Judgment

Next, Marten Transport moves for summary judgment on all of the claims against it. Echoing the discussion above, Marten Transport argues that it has no duty to indemnify, defend, or hold Coca-Cola Southwest harmless because the *Gero* action concerns Coca-Cola Southwest's sole negligence. (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 10-13.) Marten Transport also insists that it carried out its other obligations under the Agreement or, at minimum, is not responsible for the alleged damages stemming from a breach. (*Id.* at 13-19.) As to Count II, Marten Transport argues that Coca-Cola Southwest's request for declaratory judgment should fail because it mirrors Count I and does not involve a case or controversy. (*Id.* at 19-23.) Finally, Marten Transport seeks summary judgment on Count III for attorney's fees and litigation expenses, claiming that no evidence shows it has acted in bad

12

faith, been stubbornly litigious, or caused unnecessary trouble and expense. (*Id.* at 24-25.) The Court addresses each argument in turn.

As explained, Article 19.1 imposes a duty on Marten Transport to defend Coca-Cola Southwest in the *Gero* action, but even so, Marten Transport argues that it will never have an obligation to indemnify or hold Coca-Cola Southwest harmless for a resulting loss. Because only Coca-Cola Southwest's negligence is at issue in the *Gero* action, Marten Transport maintains, any damages awarded in that lawsuit will be attributable to Coca-Cola Southwest and not indemnifiable under the Agreement. (*Id.* at 12, 18-19.) In response, Coca-Cola Southwest asks the Court to stay this case until the amount of indemnifiable losses, if any, is determined in the *Gero* action. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 13-14.) In its briefing on the motion to stay, Coca-Cola Southwest notes that the *Gero* action may be resolved through a settlement, in which case there would be no clear apportionment of fault among the various parties. (Reply Br. in Supp. of Pl.'s Mot. to Stay, at 4.) According to Coca-Cola Southwest, "if there is any evidence whatsoever of [Marten Transport's] or Gero's negligence . . . and Gero and [Coca-Cola Southwest] settle the disputed claims, Marten [Transport] will be required to indemnify [Coca-Cola Southwest] for the portion of losses attributable to someone *other than* [Coca-Cola Southwest]." (*Id.*)

Indeed, "[t]he wealth of authority counsels against exercising jurisdiction over the premature issue of the duty to indemnify while an

underlying lawsuit is still pending." *Travelers Indem. Co. of Am. v. L.H.R. Farms, Inc.*, 2010 WL 11603153, at *4 (N.D. Ga. May 18, 2010) (quotations marks, citation, and punctuation omitted); *see also Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 770 (11th Cir. 2019) (holding, with a narrow exception, that the duty to indemnify is not ripe for adjudication until the underlying lawsuit is resolved); *Almassud*, 413 F. Supp. 3d at 1301 (declining to consider the insurer's duty to indemnify while there was no final judgment in the underlying case). Unlike with the duty to defend, the question of whether Marten Transport is required to indemnify Coca-Cola Southwest might never arise if Coca-Cola Southwest defeats Gero's claims in the first place. *See Nationwide Mut. Fire Ins. Co. v. Dillard House, Inc.*, 651 F. Supp. 2d 1367, 1372-73 (N.D. Ga. 2009). "[I]t is not the function of a United States District Court to sit in judgment on . . . nice and intriguing questions which today may readily be imagined, but may never in fact come to pass." *Mid-Continent*, 766 F. App'x at 770-71 (citation omitted). So, the Court denies summary judgment to Marten Transport, without prejudice, as to the scope of its indemnification and hold harmless obligations. For the same reason, following entry of this Order, the Court will stay this case until the *Gero* action is resolved.

The next issue before the Court is whether Marten Transport complied with the insurance and safety provisions of the Agreement. First, Schedule E of the Agreement requires Marten Transport to acquire commercial general

liability insurance with limits of at least $1,000,000 per occurrence and $2,000,000 in the aggregate; the policy must be written as a primary policy and name Coca-Cola Southwest as an additional insured. (Agreement, Schedule E ¶ 1(a).) The policy must also "cover claims, suits, actions or proceedings against each insured; provided [Coca-Cola Southwest] . . . w[as] not responsible, in whole or in part, in causing any injury or damage resulting in [Marten Transport's] insurance provider to pay a claim." (*Id.* ¶ 16.2.) According to Marten Transport, its commercial general liability policy (the "CGL Policy") satisfies each of these requirements: it is a primary policy that provides an "each occurrence limit" of $1,000,000, contains an endorsement setting the "general aggregate limit" at $2,000,000, and includes as an additional insured "[a]ny person or organization whom you have agreed to include as an additional insured under a written contract[.]" (CGL Policy, at ACE000017, ACE000040, ACE000045, ACE000071.) The coverage afforded is not "broader than that which you are required by the contract or agreement to provide for such additional insured." (*Id.* at ACE000071.)

Coca-Cola Southwest counters that Marten Transport must not have the proper insurance because Coca-Cola Southwest's tender of defense and demand for indemnity were denied under the CGL Policy. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 18-19.) Because the CGL Policy does not cover Gero's claims against Coca-Cola Southwest, it argues, the policy does not "cover claims, suits, actions or proceedings against each insured," as required

15

by Article 16.2. (*Id.* at 18.) But Coca-Cola Southwest's response fails to identify a single non-conforming or missing term in the CGL Policy itself. As Marten Transport notes, "a denial of coverage does not mean the insurance was not adequate, it just means that the insurance does not provide coverage for the [*Gero* action]." Explaining its coverage denial to Coca-Cola Southwest, Marten Transport's insurer pointed to the additional insured endorsement, which applies only "with respect to liability . . . caused, in whole or in part, by [Marten Transport's] acts or omissions or the acts or omissions of those acting on [Marten Transport's] behalf[.]" (Pl.'s Br. in Supp. of Pl.'s Mot. for Summ. J., Ex. F at CCSWB_000072-73.) Coca-Cola Southwest has not shown how this limitation—which withdraws coverage where, as here, Coca-Cola Southwest's sole negligence is alleged—violates the Agreement. For this reason, the Court grants summary judgment to Marten Transport on Counts I and II with respect to the commercial general liability insurance requirement.

Schedule E of the Agreement also requires Marten Transport to procure statutory workers' compensation insurance and employer's liability insurance in the minimum amount of $1,000,000 each employee by accident, $1,000,000 each employee by disease, and $1,000,000 aggregate by disease "with benefits afforded under the laws of the state or country in which the services are to be performed." (Agreement, Schedule E ¶ 1(d).) The workers' compensation policy must also be written as a primary policy. (*Id.*) Again, Marten Transport argues that at the time of Gero's accident, it had a policy (the "Workers' Compensation

16

Policy") that conformed with each of these requirements. (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 17.) Coca-Cola Southwest takes issue with the Workers' Compensation Policy in one respect: that Marten Transport self-administered Gero's workers' compensation claim under Wisconsin law rather than Texas law. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 17.) But the plain terms of the Agreement require that the policy *afford* benefits in the states in which the services are to be performed; it says nothing about whether claims arising out of those services must actually be *administered* in a particular state. Because the Workers' Compensation Policy applied to the laws of Texas—where Gero was working at the time of his accident—the Court grants summary judgment to Marten Transport on Counts I and II with respect to the workers' compensation insurance requirement. (Workers' Compensation Policy, at 4.)

Marten Transport also moves for summary judgment on the issue of whether Marten Transport and/or Gero violated safety requirements specified in the Agreement. (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 17.) This matter, Marten Transport argues, is not ripe because it will be, but has not yet been, adjudicated in the *Gero* action. (*Id.* at 18.) Also, assuming there was a breach of an applicable safety regulation, Marten Transport argues that Coca-Cola Southwest will suffer no damages because any negligence by Marten Transport or Gero would simply reduce the award against Coca-Cola Southwest. (*Id.* at 18-19.) In the Court's view, it would be premature to pass

17

judgment on this issue while the *Gero* action is pending: the question of whether someone other than Coca-Cola Southwest was responsible for Gero's injuries bears directly on the question of whether Marten Transport has an obligation to indemnify Coca-Cola Southwest. Thus, the Court will allow the comparative fault of the parties to be litigated in the *Gero* action before addressing Coca-Cola Southwest's safety claim. Marten Transport's motion for summary judgment is denied, without prejudice, as to its compliance with the Agreement's safety provision.

Moving to Count II, Marten Transport argues that this declaratory judgment claim should fail in light of the analogous breach of contract claim. (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 19.) As explained, "[a] declaratory judgment does not serve a useful purpose where it is completely duplicative of a breach of contract claim." *Bauer*, 2022 WL 912687, at *4. Consequently, it is common practice for district courts to dismiss a claim for declaratory judgment where a plaintiff asserts a corresponding claim for breach of contract. *See id.* Coca-Cola Southwest, however, argues that Count II is not redundant because it requests forward-looking relief, and "forward looking declaratory judgment claims can . . . coexist with breach of contract claims that are retroactive in nature." (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 19 (quoting *Bauer*, 2022 WL 912687, at *4).) Specifically, Coca-Cola Southwest argues that Marten Transport continues to owe defense and indemnification responsibilities for the duration of the *Gero* action. (*Id.* at

18

19-20.)

As an initial matter, the Court has already dispensed with three of Coca-Cola Southwest's requests for declaratory judgment in this Order— related to Marten Transport's (1) duty to defend and its obligations to carry (2) commercial general liability insurance and (3) statutory workers' compensation insurance. (First Am. Compl. ¶ 57(1), (4)-(5).) The sole remaining request is for a declaration that Marten Transport is required to indemnify and hold Coca-Cola Southwest harmless against all losses arising out of the *Gero* action. (*Id.* ¶ 57(2)-(3).) Right now, this request is prospective in nature because Marten Transport's indemnification and hold harmless duties will not arise, if ever, until Coca-Cola Southwest suffers an adverse verdict in the *Gero* action. But the Court will not be adjudicating these duties until the *Gero* action is resolved. At that point, Coca-Cola Southwest's declaratory judgment claim will depend primarily on past conduct—that is, Marten Transport's decision not to indemnify and hold Coca-Cola Southwest harmless for the *Gero* judgment— which can be dealt with through Coca-Cola Southwest's breach of contract claim. Accordingly, the Court agrees with Marten Transport that Count II should be dismissed in its entirety.

Finally, Marten Transport moves for summary judgment on Count III for attorney's fees and litigation expenses under O.C.G.A. § 13-6-11. (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 24.) That statute allows a plaintiff to recover his litigation expenses "where the defendant [1] has acted in bad faith,

[2] has been stubbornly litigious, or [3] has caused the plaintiff unnecessary trouble and expense[.]" O.C.G.A. § 13-6-11. As Coca-Cola points out, the jury is generally tasked with deciding whether O.C.G.A. § 13-6-11 is satisfied. *See Am. Med. Trans. Grp., Inc. v. Glo-An, Inc.*, 235 Ga. App. 464, 467 (1998). However, this is a case in which summary adjudication is appropriate. First, Georgia law is clear that there can be no stubborn litigiousness or unnecessary trouble and expense where a bona fide controversy exists between the parties. *See M & H Constr. Co, Inc. v. N. Fulton Dev. Corp.*, 238 Ga. App. 713, 714 (1999). As evidenced by the analysis in this Order, there is no question that this case presents such a bona fide controversy. Second, the extent of Coca-Cola Southwest's evidence of bad faith is that Marten Transport and its insurer denied Coca-Cola Southwest's tender of defense and demand for indemnity. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 21 & n.50.) But the mere failure to pay a just debt is insufficient to establish the bad faith prong of O.C.G.A. § 13-6-11. *See id.* at 715. So, the Court concludes that Marten Transport is entitled to summary judgment on Count III.

## IV.   Conclusion

For the foregoing reasons, the Plaintiff's Motion for Partial Summary Judgment [Doc. 72] is GRANTED, the Plaintiff's Motion to Stay [Doc. 75] is GRANTED, and the Defendant's Motion for Summary Judgment [Doc. 76] is GRANTED in part and DENIED in part. This case is STAYED pending resolution of *Gero v. Coca-Cola Southwest Beverages, LLC*, Case No.

2020-28324, in the 11th Judicial District of Harris County, Texas.

SO ORDERED, this    7th    day of August, 2023.

THOMAS W. THRASH, JR.
United States District Judge